**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

MELINDA ROHLOFF,

       Plaintiff,

vs.

METZ BAKING COMPANY, L.L.C.;
METZ HOLDINGS, INC., and
WILLIAM BELL,

       Defendants.

No. C 06-4058-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

———————————

**TABLE OF CONTENTS**

I.  *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *B.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.  *LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    *A.  Summary Judgment Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    *B.  Arguments Of The Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        *1.    The defendants' argument* . . . . . . . . . . . . . . . . . . . 13
        *2.    Rohloff's response* . . . . . . . . . . . . . . . . . . . . . . . . 14
        *3.    The defendants' reply* . . . . . . . . . . . . . . . . . . . . . 15
    *C.  Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        *1.    Prohibitions and analytical framework* . . . . . . . . . . . . . . 15
        *2.    Rohloff's* prima facie *case* . . . . . . . . . . . . . . . . . . . 17
            *a.    Qualification* . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
            *b.    Inference of discrimination* . . . . . . . . . . . . . . . . 20
        *3.    The defendants' legitimate, non-discriminatory reason* . . . . . 22
        *4.    Pretext* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

III.  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**P**regnancy or absenteeism?  Those are the alternative explanations for a probationary employee's termination asserted by the probationary employee and her employer in this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Iowa Civil Rights Act (ICRA), Iowa Code Ch. 216. The employer, a baking company, seeks summary judgment on the ground that it properly terminated the plaintiff after she accrued her fourth absenteeism "point" during her sixty-day probationary period, but the employee contends that she was taken off the schedule then terminated just days after her employer learned that she was pregnant, despite a favorable thirty-day job evaluation and despite having only half the absenteeism "points" that would justify termination under the company's attendance policy.  On the baking company's motion for summary judgment, the court must decide whether the plaintiff has generated sufficient fact questions for her claims to go to trial.

## I.  INTRODUCTION

### A.  Factual Background

The court will not attempt here an exhaustive dissertation on the undisputed and disputed facts in this case.  Rather, the court will set forth sufficient of the facts, both undisputed and disputed, to put in context the parties' arguments concerning the defendants' motion for summary judgment.

Defendants Metz Baking Company, L.L.C., and Metz Holdings, Inc., (collectively, "Metz") are engaged in the business of food production and baking.  Defendant William

2

Bell is the production manager for the Metz baking plant in Sioux City, Iowa. Metz hired plaintiff Melinda Rohloff on February 21, 2005. Like all new employees, Rohloff was hired as a "jobber," that is, an employee who is trained for various positions until he or she is hired permanently for a full-time position. The parties agree that the first sixty days of employment for a new employee are a "probationary period," during which the Collective Bargaining Agreement provides Metz with the sole discretion to judge the competency of the new employee.

The parties also agree that, pursuant to its written Attendance Policy, Metz used a "point system" for absences and tardies under which an absence was assessed one "point," and a tardy counted as one-half absence and, as such, was assessed one-half "point." *See* Defendants' Appendix at 11-13. The Attendance Policy provided a graduated system of disciplinary action for absences as follows:

- If an employee has four (4) absences within a twelve-(12) month period—a consultation will be held with the employee.
- If an employee has five (5) absences within a twelve-(12) month period—a written verbal warning [sic; written and/or verbal warning(?)] with consultation shall be issued.
- If an employee has six (6) absences within a twelve-(12) month period—a written warning with a consultation shall be issued.
- If an employee has seven (7) absences within a twelve-(12) month period—a final written warning with consultation and a three (3) day suspension without pay shall be issued. A second instance of the suspension level of discipline within a twelve month period will result in an Agreement between the Company and the associate to go without an instance of absenteeism or tardiness for a duration of six months.

3

- If an employee has eight (8) absences within a twelve-(12) month period—he/she will be subject to discharge.

Defendants' Appendix at 12. Certain specifically listed absences do not count as unexcused absences: vacation, pre-approved personal leave, leave under the Family and Medical Leave Act (FMLA), work injury, bereavement, jury duty or subpoena as a witness, and lack of work as determined by a supervisor. All other absences not listed are considered unexcused, even if they occur with prior notice, and consequently accrue "points" under the Attendance Policy. *Id.*[1] Metz describes this policy as a "no fault" policy.

Metz maintains that a new employee is allowed only four absenteeism occurrences or "points" during the probationary period, based on Rohloff's written statement to the Iowa Civil Rights Commission (ICRC), but Metz cites no policy or statement of any company officials to that effect. Indeed, Bell testified that there was no specific rule concerning absences during the probationary period. Plaintiff's Appendix at 13 (Bell's Deposition at 30-31). Rohloff also explained in her deposition that, at the time that she submitted her written statement to the ICRC, she had been confused about the point system for absences, so that her comment that she was permitted only four absences during her probationary period was erroneous. Plaintiff's Appendix at 8 (Rohloff's Deposition at 50-51). In reply to Rohloff's assertions that there was no set policy concerning absences during the probationary period, Metz produced the Separation Form and Absentee Record for a male probationary employee, identified as "Tom W.," who had four absences during

---

[1]The policy also allows employees to reduce their accumulated absence points by periods of good attendance, but Rohloff does not argue that she qualified for such a reduction in her accumulated points.

4

his probationary period and who was terminated because he "failed probation." Defendants' Supplemental Appendix at 1-2.

The parties agree that, during her probationary period, Rohloff had several absences and tardies. Specifically, she was absent on March 13, 2005, for which she received one absenteeism point. She was absent again on March 26, 2005, and March 28, 2005, for which she received one point, apparently because the two absences were considered one "occurrence." She was then tardy twice, on April 1 and 2, 2005, for which she received another point. Thus, by April 2, 2005, Rohloff had already accumulated three absenteeism points.

Rohloff had her thirty-day evaluation meeting with Bell on April 4, 2005, at which time the parties agree that Bell gave Rohloff a generally favorable rating and indicated that she was "qualified" to perform the jobs she was doing—indeed, Rohloff maintains that Bell told her that she was an "asset" to the company. The parties also agree, however, that Bell did express concern about the number of absenteeism points that Rohloff had already accumulated. Because of her attendance issues, Bell gave Rohloff an overall evaluation of 3 out of 5 possible points. Bell did not, however, tell Rohloff that she would be terminated if she had any more absences.

Notwithstanding Bell's expression of concern about her attendance, Rohloff was absent again on April 10, 2005, for which she received a fourth absenteeism point. After the April 10, 2005, absence, Bell called Rohloff to inform her that she would be placed on "on-call status," because her work performance was "not what the company expected."[2] Rohloff was, consequently, taken off the schedule on April 11, 2005.

_____

[2]In the defendants' own Statement Of Undisputed Facts, ¶ 16, the defendants assert that it is undisputed that Bell told Rohloff that "she would be placed on-call because her
(continued...)

Case 5:06-cv-04058-MWB   Document 26   Filed 06/12/07   Page 5 of 26

Rohloff did not actually work after April 8, 2005. Metz terminated Rohloff on April 21, 2005, at the end of her probationary period. Rohloff contends that Bell told her at that time, "We are going to release you because your work performance isn't what we expected." Metz and Bell admit that Bell terminated Rohloff on April 21, 2005, but deny that Bell gave any explanation at all for her termination.[3]

---

[2](...continued)
work performance was not what the company expected," which Rohloff admitted. *See* Plaintiff's Response To Defendants' Statement of Undisputed Facts, ¶ 16. In support of the defendants' contention that this fact is "undisputed," the defendants cite a portion of Rohloff's deposition in which she testified that, in a telephone call after the April 10, 2005, absence, Bell told her that she "was going to be on call because my work performance wasn't what they expected." *See* Defendants' Appendix at 3 (Rohloff's Deposition at 20).

On the other hand, in response to Rohloff's Statement Of Additional Facts In Response To Defendants' Motion For Summary Judgment, ¶ 10, in which Rohloff asserts that Bell told her that she "was going to be placed 'on call' because her work performance 'wasn't what they expected,'" the defendants "admit that Rohloff was placed on call and denies [sic] the remainder of the statement." Defendants' Response To Plaintiff's Statement Of Additional Facts, ¶ 10. In support of this apparently contrary contention, the defendants cite a portion of Bell's deposition, in which he testified that he told Rohloff in a phone message on April 11, 2005, that "we were going to put her on call at this time as a jobber due to attendance." Plaintiff's Appendix at 12 (Bell's Deposition at 26).

Thus, the defendants have asserted that precisely the same version of Bell's reason for putting Rohloff on "on-call status" is disputed and undisputed, depending upon which party offered that version as an undisputed fact. The defendants cannot have it both ways, however. At the very least, the defendants' own internal inconsistency demonstrates that there is a factual dispute as to the precise reason that Bell gave for putting Rohloff on "on-call status." The question, of course, is whether the two versions of the reason that Bell gave for putting Rohloff on "on-call status" are so inconsistent that they generate genuine issues of material fact as to the reason that Metz took adverse action against Rohloff. The court will return to that question in its legal analysis.

[3]Rohloff cites her own deposition in support of her version, *see* Plaintiff's Appendix at 3 (Rohloff's Deposition at 18, 21), and the defendants cite Bell's deposition in support

(continued...)

Rohloff contends that, prior to her termination, Bell had a conversation with her on April 6 or 7, 2005, during which he purportedly told her, "I hear congratulations are in order," because he understood that she was pregnant. Rohloff contends that Bell then told her, rudely, to take off all the time she needed, because it gets hot in the plant. The defendants deny that Bell ever had any such conversation with Rohloff and deny that Bell knew that Rohloff was pregnant until she filed "a civil action." Rohloff also states that she knew that she was pregnant when she was hired by Metz and told the first person who trained her that she was pregnant. Indeed, Rohloff asserts that it was common knowledge at the baking plant that she was pregnant, because she had told several co-employees and supervisors, which Metz denies.

## B. Procedural Background

On June 26, 2006, plaintiff Melinda Rohloff filed suit in Iowa District Court in and for Woodbury County against defendants Sara Lee Bakery Group, Sara Lee Corporation, and William Bell alleging pregnancy discrimination in violation of state and federal law. The defendants removed this action to this federal court on July 17, 2006 (docket no. 1), asserting federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441(b) and 1446. On the same date, the defendants filed a joint Answer (docket no. 2) asserting, *inter alia*, that Rohloff had named the wrong corporate defendants.

On September 6, 2006, Rohloff was granted leave to file an Amended Complaint (docket no. 9) to add Metz Baking, L.L.C., and Metz Holdings, Inc., as defendants and to make other amendments related to the removal of the case to federal court. On March

---

[3](…continued)
of theirs. *See* Plaintiff's Appendix at 12 (Bell Deposition at 27).

28, 2007, Rohloff was granted leave to file a Second Amended Complaint (docket no. 14), this time to drop Sara Lee Bakery Group and Sara Lee Corporation from the lawsuit and to identify Metz Baking, L.L.C., as Metz Baking Company, L.L.C. As amended, Rohloff's claims against defendants Metz Baking Company, L.L.C., Metz Holdings, Inc., and William Bell are for pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Iowa Civil Rights Act (ICRA), IOWA CODE CH. 216. Rohloff seeks compensatory damages, including but not limited to back pay and past and future emotional distress; punitive damages; costs; attorneys fees; any other damages recoverable under state and federal law; and such other relief as the court may deem proper and equitable.

On March 29, 2007, the defendants filed a joint Answer And Affirmative Defenses To the Second Amended Complaint (docket no. 15). In addition to denying Rohloff's pregnancy discrimination claims, the defendants assert as affirmative defenses that Rohloff has failed to state causes of action on which relief can be granted; that the defendants had a legitimate, non-discriminatory business justification for terminating Rohloff based upon her excessive absenteeism and tardiness; that Rohloff never disclosed her pregnancy to anyone at Metz and that her pregnancy was not obvious to anyone at Metz during the time that she was employed there, so that the defendants' decisions regarding her were made in good faith; that Rohloff has failed to mitigate her damages; and that Metz Holdings, Inc., is not Rohloff's employer and had no direct employment relationship with her.

This matter is set for a bench trial to begin on October 29, 2007. However, on March 29, 2007, the defendants filed a Motion For Summary Judgment (docket no. 16), with a request for oral arguments, seeking summary judgment in their favor on both of Rohloff's pregnancy discrimination claims. After an extension of time to do so, Rohloff

8

filed her Resistance (docket no. 21) on May 7, 2007. On May 14, 2007, the defendants filed a Reply (docket no. 23) in further support of their motion.

The court heard oral arguments on the defendants' Motion For Summary Judgment on June 7, 2007. At the oral arguments, plaintiff Melinda Rohloff was represented by Jay Denne of Munger, Reinschmidt & Denne, L.L.P., in Sioux City, Iowa. Defendants Metz Baking Company, L.L.C., Metz Holdings, Inc., and William Bell were represented by Gene LaSuer of Davis, Brown, Koehn, Shors & Roberts, P.C., in Des Moines, Iowa. The defendants' Motion For Summary Judgment is now fully submitted.

## II. LEGAL ANALYSIS

### A. Summary Judgment Standards

Rule 56 of the Federal Rules of Civil Procedure provides that a defending party may move, at any time, for summary judgment in that party's favor "as to all or any part" of the claims against that party. *Fed. R. Civ. P.* 56(b). "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(c). As this court has explained on a number of occasions, applying the standards of Rule 56, the judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Bunda v. Potter*, 369 F. Supp. 2d 1039, 1046 (N.D. Iowa 2005); *Steck v. Francis*, 365 F. Supp. 2d 951, 959-60 (N.D. Iowa 2005); *Lorenzen v. GKN Armstrong Wheels, Inc.*, 345 F. Supp. 2d 977, 984 (N.D. Iowa 2004); *Nelson v. Long Lines Ltd.*, 335 F. Supp. 2d 944, 954 (N.D. Iowa 2004); *Soto v. John Morrell & Co.*, 315 F. Supp. 2d 981, 988 (N.D. Iowa 2004); *see also Quick v.*

9

*Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir. 1990). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Quick*, 90 F.3d at 1377. Furthermore, "where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996) (quoting *Crain v. Bd. of Police Comm'rs*, 920 F.2d 1402, 1405-06 (8th Cir. 1990)).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *see also Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1107 (8th Cir. 1998); *Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir. 1993). When a moving party has carried its burden under Rule 56(c), the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir. 1995); *Beyerbach v. Sears*, 49 F.3d 1324, 1325 (8th Cir. 1995). An issue of material fact is "genuine" if it has a real basis in the record. *Hartnagel*, 953 F.2d at 394 (citing *Matsushita Elec. Indus.*, 475 U.S. at 586-87). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," i.e., are "material." *Anderson v.*

10

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Beyerbach*, 49 F.3d at 1326; *Hartnagel*, 953 F.2d at 394. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to a judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323; *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir. 1997). Ultimately, the necessary proof that the nonmoving party must produce is not precisely measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994).

The Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment discrimination cases." *See Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994). This exceptional deference shown the nonmoving party is warranted, according to the Eighth Circuit Court of Appeals, "[b]ecause discrimination cases often turn on inferences rather than on direct evidence . . . . ," *E.E.O.C. v. Woodbridge Corp.*, 263 F.3d 812, 814 (8th Cir. 2001) (*en banc*) (citing *Crawford*, 37 F.3d at 1341; *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999)), and because "intent" is generally a central issue in employment discrimination cases. *Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1071 (8th Cir. 1998) (citing *Gill v. Reorganized Sch. Dist. R-6, Festus, Mo.*, 32 F.3d 376, 378 (8th Cir. 1994)). Nonetheless, this exercise of judicial prudence "cannot and should not be construed to exempt" from summary judgment, employment discrimination cases involving intent. *Christopher*, 137 F.3d at 1071 (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 959 (8th Cir. 1995)). The fact remains that "the ultimate burden of persuading the trier of fact that the defendants intentionally discriminated against the plaintiff remains at all times with the plaintiff."

Case 5:06-cv-04058-MWB   Document 26   Filed 06/12/07   Page 11 of 26

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000). The court will apply these standards to the defendants' Motion for Summary Judgment.

However, the court must first observe that stating the legal principles of summary judgment in employment discrimination cases is a simple task. Applying those principles to the paper record that forms the judicial crucible that decides which plaintiffs may proceed to trial and which get dismissed is far more daunting. Missing in the standard incantation of summary judgment principles is the role of experience. Justice Oliver Wendell Holmes wrote, "The life of the law has not been logic; it has been experience." OLIVER WENDELL HOLMES, THE COMMON LAW 1 (1881). Thus, experience teaches that thoughtful deliberation of summary judgment in employment discrimination cases is grounded in the consideration of each case through a lens filtered by the following observations. Employment discrimination and retaliation, except in the rarest cases, is difficult to prove. It is perhaps more difficult to prove today—more than forty years after the passage of Title VII—than during Title VII's earlier evolution. Today's employers, even those with only a scintilla of sophistication, will neither admit discriminatory or retaliatory intent, nor leave a well-developed trail demonstrating it. *See, e.g., Riordan v. Kempiners*, 831 F.2d 690, 697-98 (7th Cir. 1987). Because adverse employment actions almost always involve a high degree of discretion, and most plaintiffs in employment discrimination cases are at will, it is a simple task for employers to concoct plausible reasons for virtually any adverse employment action ranging from failure to hire to discharge. This is especially true, because the very best workers are seldom employment discrimination plaintiffs due to sheer economics: Because the economic costs to the employer for discrimination are proportional to the caliber of the employee, discrimination against the best employees is the least cost effective. *See, e.g., id.* Rather, discrimination plaintiffs tend to be those average or below-average workers—equally protected by Title

12

VII—for whom plausible rationales for adverse employment actions are readily fabricated by employers with even a meager imagination. *See, e.g., id.* Consequently, with both the legal standards for summary judgment and the teachings of experience in hand, the court turns to consideration of the parties' arguments for and against summary judgment.

### B. Arguments Of The Parties

#### 1. The defendants' argument

The defendants contend that Rohloff cannot satisfy two of the elements of her *prima facie* case of pregnancy discrimination, because she was not qualified for her position and she was not discharged under circumstances giving rise to an inference of discrimination. As to the "qualification" element, they contend that Rohloff was not performing her job at a level that met Metz's legitimate expectations, because of her excessive absenteeism during her probationary period. The defendants assert that there are no genuine issues of material fact that the Collective Bargaining Agreement gave Metz the sole discretion to judge the competency of probationary employees, that Rohloff was told that she was only allowed four absences during the probationary period, and that Rohloff had that many absences as of April 10, 2005. Indeed, at oral arguments, the defendants relied entirely on their assertion that there is no dispute that the policy was clear that a probationary employee was subject to dismissal if he or she had four absenteeism points, and that Rohloff was aware of the policy. They also contend that there are no genuine issues of material fact on the "inference of discrimination" element, because Rohloff has not identified any male probationary employee who was treated more favorably than she was.

Next, the defendants assert that they had a legitimate, non-discriminatory reason for terminating Rohloff, her excessive absenteeism, and that Rohloff has not established that this stated reason for her termination is a mere pretext for discrimination. The defendants

13

assert that Rohloff has nothing more than speculation to suggest that her pregnancy had anything to do with her termination. Finally, they contend that their honest explanation for Rohloff's discharge is sufficient to defeat Rohloff's claim, where Rohloff lacks evidence to support any other explanation.

### 2. *Rohloff's response*

In response, Rohloff argues that she has, indeed, generated genuine issues of material fact that she was "qualified" for her position and that the circumstances of her termination give rise to an "inference of discrimination." As to "qualification," she points to evidence that she already had three absenteeism points when she met with Bell for her thirty-day evaluation, but Bell still rated her as "qualified" on the jobs she was performing, indicated that she was generally doing a good job, and said nothing about terminating her the next time that she was absent. Similarly, she contends that she has raised the necessary "inference of discrimination," because this element does not require her to show that a similarly situated but non-protected employee was treated more favorably, even if such a showing is one way to raise the required inference. Instead, she contends that she has met the low threshold required to make out a *prima facie* case by showing that she had only half of the absenteeism points that would justify her termination under the written attendance policy and that she was terminated without a consultation or warning despite a recent favorable job evaluation. She also points to a suspicious timeline, in which she received a favorable review, her employer learned of her pregnancy, and she was put on "on-call status," all within just a few days, April 4 through 11, 2005. She also contends that Bell's attitude toward her changed completely once he knew that she was pregnant.

Contrary to the defendants' contentions, Rohloff also asserts that there are genuine issues of material fact regarding whether or not the defendants' proffered reasons for her termination are pretexts for discrimination. Rohloff contends that there is a genuine issue

14

of material fact about the key issue of whether or not Bell knew that she was pregnant at the time that he took adverse actions against her. Where the only intervening circumstance between her favorable review and adverse action was Bell learning that she was pregnant, Rohloff argues that there have to be genuine issues of material fact about whether the proffered reasons for terminating her are pretexts for pregnancy discrimination. Indeed, she contends that the factual disputes cast doubt on the "honesty" of the defendants' professed reasons for terminating her.

### 3. *The defendants' reply*

The defendants contend that Rohloff has admitted that Bell expressed concern about her attendance and tardiness in her thirty-day evaluation meeting, but that she still had another absence within days of the meeting. Under the circumstances, the defendants contend that they had the sole discretion under the Collective Bargaining Agreement to remove Rohloff, because she was a probationary employee. They also argue, for the first time in their Reply, that a similarly-situated male probationary employee, "Tom W.," was terminated when he had four absences during his probationary period. Next, they contend that courts have been reluctant to find genuine issues of material fact as to pretext on the basis of temporal proximity alone, which is all that Rohloff has presented. Finally, they contend that there is no other evidence that generates a genuine issue of material fact that Rohloff's pregnancy, not her attendance problem, was the reason for her termination.

### C. *Analysis*

### 1. *Prohibitions and analytical framework*

The Pregnancy Discrimination Act of 1978 (PDA) amended Title VII of the Civil Rights Act of 1964 to define "because of sex" or "on the basis of sex" to include, but not be limited to, "because of or on the basis of pregnancy, childbirth, or related medical

conditions," and to require that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in the ability or inability to work." 42 U.S.C. § 2000e(k).[4] The Iowa Civil Rights Act (ICRA) likewise provides, in pertinent part, that "[a] written or unwritten employment policy or practice which excludes from employment applicants or employees because of the employee's pregnancy is a prima facie violation of" the ICRA. IOWA CODE § 216.6(2)(a).

Where, as here, a claim of pregnancy discrimination under the PDA involves only indirect evidence of discrimination, the claim is subject to the familiar burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Quick v. Wal-Mart Stores, Inc.*, 441 F.3d 606, 610 (8th Cir. 2006). Thus, the plaintiff must establish a *prima facie* case of pregnancy discrimination; if she does so, the employer may advance a legitimate, non-discriminatory reason for adverse action against the plaintiff; and if the employer does so, the burden then returns to the plaintiff to show that the employer's reason is a pretext for pregnancy discrimination. *Id.* The Iowa Supreme Court has, likewise, embraced this burden-shifting analysis for pregnancy discrimination claims under the ICRA. *See Smidt v. Porter*, 695 N.W.2d 9, 14-15 (Iowa 2005) (citing *Pruett v. Krause Gentle Corp.*, 226 F. Supp. 2d 983, 987 (S.D. Iowa 2002), as applying this burden-shifting analysis to pregnancy discrimination claims under Title VII and the ICRA). More generally, the Iowa Supreme Court has observed, that "[t]he ICRA was modeled after Title VII of the United States Civil Rights Act" and "Iowa courts therefore

---

[4]The PDA was passed in response to a Supreme Court holding that the exclusion of pregnancy benefits did not violate Title VII. *See In re Union Pac. R.R. Employment Practices Litig.*, 479 F.3d 936, 939-40 (8th Cir. 2007) (citing *General Elec. Co. v. Gilbert*, 429 U.S. 125, 145-46 (1976), as the triggering Supreme Court ruling).

16

traditionally turn to federal law for guidance in evaluating the ICRA," employing "the analytical framework utilized by the federal courts in assessing federal law," although federal law is not controlling. *Vivian v. Madison*, 601 N.W.2d 872, 873 (Iowa 1999). Therefore, the court, like the parties, will not analyze Rohloff's state and federal pregnancy discrimination claims separately. Rather, the court will analyze Rohloff's federal claim, assuming that the same analysis would apply to her state claim.

### 2. *Rohloff's* **prima facie** *case*

A *prima facie* case of pregnancy discrimination requires the plaintiff to show the following: (1) that she was a member of a protected group; (2) that she was qualified for her position; and (3) that she was discharged under circumstances giving rise to an inference of discrimination. *See Bergstrom-Ek v. Best Oil Co.*, 153 F.3d 851, 857 (8th Cir. 1998); *accord Smidt*, 695 F.3d at 14 (stating the same elements for both a state claim and a federal claim). The first element is not in dispute here, because the parties agree that Rohloff was pregnant at the time of adverse action against her by the defendants, so that she was a member of a protected group under § 2000e(k) and Iowa Code § 216.6(2)(a). The defendants do, however, challenge Rohloff's ability to generate genuine issues of material fact on the other two elements of her *prima facie* case of pregnancy discrimination, "qualification" and "inference of discrimination." The court will consider those elements in turn.

### a. *Qualification*

The defendants challenge Rohloff's ability to establish or generate genuine issues of material fact on the "qualification" element of her *prima facie* case. *See Bergstrom-Ek*, 153 F.3d at 857 (second element); *Smidt*, 695 N.W.2d at 14 (same). The Eighth Circuit Court of Appeals recently explained the "qualification" element of the plaintiff's *prima facie* case in a Title VII sex discrimination case as follows:

Case 5:06-cv-04058-MWB   Document 26   Filed 06/12/07   Page 17 of 26

> At the prima facie stage of a sex discrimination case, the employee must demonstrate objective qualifications. *Legrand v. Trustees of University of Arkansas at Pine Bluff*, 821 F.2d 478, 481 (8th Cir. 1987). An employee must show that her qualifications are equivalent to the minimum objective criteria. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003). The threshold criteria are the plaintiff's physical ability, education, experience in the relevant industry, and the required general skills. *Whitley v. Peer Review Systems, Inc.*, 221 F.3d 1053, 1055 (8th Cir. 2000) (physical ability); *Wexler*, 317 F.3d at 576 (education, experience, and general skills). These qualifications are demonstrated when the employee "actually performs her job at a level that [meets her] employer's legitimate expectations." *Whitley*, 221 F.3d at 1055; *see also Miller v. Citizens Sec. Group*, 116 F.3d 343, 346 (8th Cir. 1997).

*Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1046-47 (8th Cir. 2005).

Applying this standard, this court recently held that a plaintiff asserting a race discrimination claim had failed to generate genuine issues of material fact on the "qualification" element of her *prima facie* case, "because her absenteeism problems and frequent counseling for those problems demonstrate that she was not actually performing her job at a level that met her employer's legitimate expectations." *Fuller v. Alliant Energy Corporate Servs., Inc.*, 456 F. Supp. 2d 1044, 1065 (N.D. Iowa 2006). Here, even though the defendants also assert that Rohloff's absenteeism problems demonstrate that she was not "qualified," this court finds Rohloff's circumstances are sufficiently distinguishable from those in *Fuller* that Rohloff has generated a genuine issue of material fact on this element.

Specifically, the record here does not show that Rohloff was ever specifically warned that a further absence might result in her termination, even if Bell indicated in Rohloff's thirty-day evaluation that her attendance needed improvement. In contrast, the

18

plaintiff in *Fuller* had been expressly warned that continued failure to meet attendance expectations would result in further disciplinary action up to and including termination of employment. *See id.* at 1055.[5] Moreover, even though the defendants assert that they had the sole discretion to judge the competency of probationary employees, the written attendance policy provides only for "consultation" with an employee with four absences within a twelve-month period, not termination. *See* Defendants' Appendix at 12. Consequently, there is a genuine issue of material fact as to whether four absences during the probationary period would justify termination. A genuine issue of material fact as to the sufficiency of four absences to justify termination of a probationary employee also arises from Bell's deposition testimony that there was no specific rule as far as absences during the probationary period, Plaintiff's Appendix at 13 (Bell's Deposition at 30-31), the lack of any citation to any policy or statement of any company officials to that effect, and the defendants' reliance, instead, on Rohloff's written statement to the Iowa Civil Rights Commission (ICRC), which she explained in deposition was the result of her confusion about the point system for attendance. *See* Plaintiff's Appendix at 8 (Rohloff's Deposition at 50-51). Finally, while the defendants expect the court to make the leap of faith that Tom W., a male probationary employee, was terminated based on the four absences documented on his Absentee Record, *see* Defendants' Supplemental Appendix at 2, the court is unwilling to make such a leap where the reason given for that employee's termination is "failed probation," without any clear indication that his attendance was the reason that he "failed probation." Defendants' Supplemental Appendix at 1. What all of

---

[5]The court notes that, in *Fuller*, there were also reasons to be suspicious of the plaintiff's very frequent use of bereavement leave and the validity of documentation that the plaintiff had offered to support bereavement and other leave. *Id.* at 1053-57. Those circumstances are not present in Rohloff's case.

Case 5:06-cv-04058-MWB   Document 26   Filed 06/12/07   Page 19 of 26

this evidence suggests is that the question of Rohloff's "qualification" should be submitted to a factfinder on a complete record, not decided by the court as a matter of law on a summary judgment record.

Therefore, the defendants are not entitled to summary judgment on Rohloff's state and federal pregnancy discrimination claims on the ground that Rohloff cannot show that she was "qualified" for her job, because Rohloff has met her burden to point to evidence generating genuine issues of material fact on the "qualification" element of her claims. FED. R. CIV. P. 56(e) (the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial"); *Celotex*, 477 U.S. at 324.

### b.    *Inference of discrimination*

The defendants also challenge the "inference of discrimination" element of Rohloff's *prima facie* case of pregnancy discrimination. *See Bergstrom-Ek*, 153 F.3d at 857 (last element); *Smidt*, 695 N.W.2d at 14 (same). The defendants assert that Rohloff cannot satisfy this element, because she has not identified any similarly situated male employee who was treated more favorably.

Different treatment of similarly-situated persons not in the plaintiff's protected class—here, non-pregnant persons—is *one* kind of evidence that may generate an inference of discrimination, but it is not the only kind of evidence that does so. *See  Twymon v. Wells Fargo & Co.,* 462 F.3d 925, 936 (8th Cir. 2006) ("Contrasting the treatment of similarly situated employees outside of the protected class with the employee's treatment is *one way* to point towards a race-based motivation.") (emphasis added); *Harris v. Hays,* 452 F.3d 714, 718 (8th Cir. 2006) ("*One way* for the claimant to establish the . . . defendant's intent to discriminate is to show that he was treated differently from similarly

20

situated nonmembers of the protected class.") (emphasis added); *Turner v. Gonzalez*, 421 F.3d 688, 694 (8th Cir. 2005) (the last element can also be met "if the employee provides 'some other evidence that would give rise to an inference of unlawful discrimination.'") (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 736 (8th Cir. 2003)); *see generally Allen v. Interior Constr. Servs., Ltd.*, 214 F.3d 978, 982 (8th Cir. 2000) ("An inference of discrimination arises where there is some evidence of a causal connection between a plaintiff's [protected characteristic] and the adverse employment action taken against the plaintiff. *See Greer v. Emerson Elec. Co.*, 185 F.3d 917, 922 (8th Cir. 1999). The evidence most often used to establish this connection is that of disparate treatment, whereby a plaintiff shows that he was 'treated less favorably than similarly situated employees who are not in plaintiff's protected class.' *See Wallin v. Minn. Dep't of Corrections*, 153 F.3d 681, 687 (8th Cir. 1998) (quoting *Johnson v. Legal Services of Ark., Inc.*, 813 F.2d 893, 896 (8th Cir. 1987)). However, *evidence of disparate treatment is not the exclusive means by which a plaintiff may establish an inference of discrimination, see Young* [*v. Warner-Jenkinson Co.*], 152 F.3d [1018,] 1022 [(8th Cir. 1998)]; any credible evidence tending to establish that an employer acted adversely to an individual 'on account of' his disability will suffice. *See Greer,* 185 F.3d at 922.") (emphasis added). Thus, Rohloff's failure to identify a similarly-situated non-pregnant person who was treated more favorably as to absenteeism during probationary employment is not fatal to her claim, as the defendants seem to suggest.

Moreover, the court finds that Rohloff has pointed to evidence from which an inference of pregnancy discrimination may arise. That inference arises, in large part, from the disputed evidence that, just days after rating Rohloff as "qualified" to perform her job and purportedly telling her that she was "an asset" to the company, Bell learned of Rohloff's pregnancy, offered his congratulations in what Rohloff believed was a rude

manner, then took adverse action against her for another absence without having warned
her that such adverse action could be a consequence of a further absence and without any
established policy for such adverse action for a certain level of absences during
probationary employment. Therefore, as to this challenged element of her *prima facie*
case, Rohloff has also pointed to evidence that generates an inference that her pregnancy,
not her absenteeism, was the reason for adverse employment action. FED. R. CIV. P. 56(e)
(the party opposing summary judgment is required under Rule 56(e) to go beyond the
pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and
admissions on file," designate "specific facts showing that there is a genuine issue for
trial"); *Celotex*, 477 U.S. at 324.

### 3. The defendants' legitimate, non-discriminatory reason

At the second stage of the burden-shifting analysis, after the plaintiff has generated
a *prima facie* case, the court considers whether the employer has offered a legitimate, non-
discriminatory reason for its actions. *See Quick*, 441 F.3d at 610; *accord Smidt*, 695
N.W.2d at 14-15 (applying state and federal law). The court is not required to examine
critically the employer's proffered reason for adverse action, nor is the court supposed to
evaluate the veracity of the employer's proffered reasons; rather, the court must only
determine whether the employer has met its burden of production. *Groves v. Cost
Planning and Mgmt. Int'l, Inc.*, 372 F.3d 1008, 1009 (8th Cir. 2004) (citing *Reeves v.
Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). The court finds that the
defendants have, as a matter of law, proffered the necessary legitimate, non-discriminatory
reason for the adverse employment action against Rohloff by pointing to her absenteeism
problems. *See Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1037 (8th Cir. 2005)
(holding that termination for excessive absences constituted a legitimate, non-
discriminatory reason for adverse action). Thus, the question is whether Rohloff can

22

establish or generate genuine issues of material fact that the defendants' proffered reason is a pretext for pregnancy discrimination. *See Quick*, 441 F.3d at 610 (if the employer meets its burden to produce a legitimate, non-discriminatory reason for its actions, the burden returns to the plaintiff to show that the employer's reason is a pretext for pregnancy discrimination); *accord Smidt*, 695 N.W.2d at 14-15 (applying state and federal law).

### 4. *Pretext*

As to pretext, whether the claim is for pregnancy discrimination or some other conduct prohibited by Title VII, the Eighth Circuit Court of Appeals has been "'hesitant to find pretext or discrimination on temporal proximity alone.'" *Quick*, 441 F.3d at 610 (quoting *Sprenger v. Federal Home Loan Bank of Des Moines*, 253 F.3d 1106, 1114 (8th Cir. 2001)); *Groves*, 372 F.3d at 1009; *but see Eliserio v. United Steelworkers of Am. Local 310*, 398 F.3d 1071, 1079 (8th Cir. 2005) ("A plaintiff can establish a causal connection between his complaints and an adverse action through circumstantial evidence, such as the timing of the two events."); *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 761 (8th Cir. 2004) (same); *Smidt*, 695 N.W.2d at 15 (recognizing that the timing of adverse action may be "particularly suspicious"). Thus, the question is whether all of the evidence, including temporal proximity, sufficiently undermines the employer's justification for adverse action against a protected employee. *Id.* The employee must ultimately show by the greater weight of the evidence—and at the summary judgment stage of the proceedings, must generate a genuine issue of material fact—that the employer's proffered explanation is unworthy of credence, and that intentional discrimination is the real reason. *Groves*, 372 F.3d at 1010; *accord Smidt*, 695 N.W.2d at 15 (describing the ultimate question as "whether [the plaintiff] has introduced sufficient admissible evidence from which a rational trier of fact could find [the employer's] alleged reasons for her termination were false, and intentional discrimination was the real reason," citing

23

*Bergstrom-Ek*, 153 F.3d at 857-58). In making the necessary showing, the plaintiff must at least generate a fact question for trial that decisionmakers knew of the plaintiff's pregnancy when they decided to take adverse action against her. *Id.*

Here, Bell's denial of Rohloff's testimony about his "congratulations" conversation only confirms that there are genuine issues of material fact as to whether or not Bell knew that Rohloff was pregnant at the time that he placed her on "on-call status," then terminated her. *Id.* (the plaintiff must generate genuine issues of material fact that the decisionmaker knew of her pregnancy). Whether or not the conversation occurred and what the content of any such conversation was are clearly credibility issues for the factfinder; Rohloff's version is sufficient to generate genuine issues of material fact on those questions. *See Hartnagel*, 953 F.2d at 394 (observing that an issue of material fact is "genuine" if it has a real basis in the record, citing *Matsushita Elec. Indus.*, 475 U.S. at 586-87). Moreover, while temporal proximity between the employer learning of the plaintiff's pregnancy and adverse action may not be enough standing alone to generate genuine issues of material fact that other legitimate reasons proffered for the adverse action are pretexts, *see Quick*, 441 F.3d at 610, the timing here, at least if the factfinder believes Rohloff's version, is certainly suspicious. *See Eliserio*, 398 F.3d at 1079 ("A plaintiff can establish a causal connection between his complaints and an adverse action through circumstantial evidence, such as the timing of the two events."); *Bainbridge*, 378 F.3d at 761 (same); *Smidt*, 695 N.W.2d at 15 (recognizing that the timing of adverse action may be "particularly suspicious"). That temporal proximity is also coupled with evidence that Metz had no set policy concerning the number of absences that a probationary employee was permitted to have and the contradictory evidence about what reasons Bell gave for adverse action against Rohloff. The defendants' own inconsistency about whether Rohloff's version of the reasons that Bell gave for his actions is undisputed or disputed also

24

helps raise a fact question on this issue. On the record presented, a reasonable factfinder could conclude that Bell's termination of Rohloff after learning that she was pregnant was discriminatory and that the non-discriminatory reason offered by the defendants is a pretext for pregnancy discrimination.

In short, the defendants are not entitled to summary judgment on the ground that Rohloff cannot generate genuine issues of material fact on the final stage of the burden-shifting analysis, because the court finds that Rohloff has pointed to evidence in addition to mere temporal proximity to suggest pretext and discriminatory intent. FED. R. CIV. P. 56(e) (the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial"); *Celotex*, 477 U.S. at 324.

### III. CONCLUSION

There is no doubt that Rohloff's below-average attendance provided a plausible, even a probable, rationale for adverse employment actions against her. Nevertheless, casting an experienced eye over the record, the court finds that a factfinder should decide which of the parties' competing explanations for Rohloff's termination, her pregnancy or her absenteeism, is the real reason for her termination, based on a complete trial record. *See* OLIVER WENDELL HOLMES, THE COMMON LAW 1 (1881) ("The life of the law has not been logic; it has been experience."). It is precisely in "iffy" cases like this, which depend upon credibility and inferences, that the court should be hesitant to grant summary judgment. *See Crawford*, 37 F.3d at 1341 (cautioning that "summary judgment should seldom be used in employment discrimination cases," because such cases turn on inferences and credibility questions).

25

THEREFORE, the defendants' March 29, 2007, Motion For Summary Judgment (docket no. 16) is **denied**.

**IT IS SO ORDERED.**

**DATED** this 12th day of June, 2007.

_Mark W. Bennett_
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

26